In re Estate of James R. Baker, Deceased.
John J. Maltby, Administrator of Estate of James R. Baker, Deceased, Appellant, v. Lorena Baker et al., Appellees.

Gen. No. 42,135.

Heard in the third division of this court for the first district at the February term, 1942. Opinion filed June 24, 1942.

John P. Derning and Chester D. Kern, both of Chicago, for appellant.

John E. Erickson, of Chicago, for appellees.

Mr. Presiding Justice Burke delivered the opinion of the court.

James R. Baker and Lorena Baker, his wife, resided at 5715 West Erie street, Chicago. A daughter Edna

and her husband, Douglas E. Warwick, resided at the Baker home. Another daughter Helen was married to John J. Maltby. On September 12, 1930, James R. Baker died, leaving surviving as his heirs at law and next of kin, Lorena Baker, his widow, Leslie R. Baker, his son, and Helen Maltby and Edna Warwick, his daughters. On September 30, 1930, John J. Maltby was appointed administrator of the estate. The Aetna Casualty & Surety Company was surety on the administrator's bond. On May 29, 1936 the surety, without notice to the heirs, petitioned the probate court to permit its petition to be accepted in lieu of a final account and to excuse the administrator from further duties. On that day an order was entered permitting the petition of the surety to stand in lieu of a final account and report by the administrator, and the administrator was discharged.

On June 19, 1940, Lorena Baker filed a petition in the probate court, pursuant to which an order was entered vacating the order entered May 29, 1936, and reopening the estate. Administrator John J. Maltby was required to file an account and report. On April 8, 1941, he filed an account and report. The account charges the administrator with the receipt of $367.42 from the Austin State Bank of Chicago, the proceeds of a checking account, and the sum of $100, the proceeds of two notes of Charles L. Casanove, dated August 10, 1930, payable 30 and 60 days after date, or a total of $467.42. The account credits the administrator with the payment of $200 to the undertakers on account of funeral expenses, $22 to the surety for the premium on the administrator's bond, $25 to an attorney for the collection of the two Casanove notes, $90 to Frank M. Pray as interest to December 24, 1930, on a mortgage on real estate, and the further sum of $90 to Frank M. Pray as interest to June 26, 1931, on a mortgage on real estate, also the sum of $6 to Frank M. Pray for a fire insurance premium, and the sum of $75

on account of attorney's fees for services rendered. These and other disbursements, aggregated the sum of $525.80. The administrator also reported that the decedent died possessed of an undivided one-fourth interest in the fee title to the real estate at 5715 West Erie street, Chicago, subject to the dower and homestead rights of Lorena Baker, the widow, and that Lorena Baker was possessed of the balance of the title; that the entire title was subject to a $3,000 mortgage executed by decedent and Lorena Baker to Frank M. Pray; that Lorena Baker requested him (administrator) to pay the interest due on the mortgage and the fire insurance and to charge such items to the widow's award to be allowed to her (Lorena Baker) and to her distributive share of the estate. He further reported that the widow's award was allowed by the court in the sum of $500, and that Lorena Baker selected to apply on such award the only chattel of the estate, a Packard automobile valued at $400; and that the automobile and the amounts paid to Frank M. Pray for interest and premium on the fire insurance policy constituted payment of the widow's award. He then set out that a claim was allowed C. Kamp & Son, undertakers, for funeral expenses in the sum of $522.35; that he paid the undertakers the sum of $200 on account and delivered to the undertakers his personal promissory notes in the sum of $322.35 to secure the balance of the claim; and he (administrator) claimed credit for the sum of $322.35 and interest thereon, and asked that the notes so delivered to the undertakers be found to be a first class lien and chargeable against the estate. He concluded by praying that his account and report be approved, that he be allowed the sum of $58.38 advanced by him, that he be allowed the further sum of $322.35, plus interest, as a first class lien against the estate because of the notes delivered to the undertaker, that he be allowed to resign as administrator, that the court appoint a successor,

that the court allow him reasonable fees for his services as administrator and reasonable compensation for the services of his attorney.

Lorena Baker, Helen B. Maltby, Edna Warwick and Leslie R. Baker filed objections. They asserted that the Packard automobile was not turned over by the administrator to Lorena Baker, nor did she select the automobile to be applied on her widow's award; that no widow's award was made or allowed until October 25, 1940; that the Packard automobile was purchased by decedent on the day of his death and came into the possession of the administrator; that it was sold by the administrator on or about September 23, 1930 for $650; that the administrator deposited the proceeds of such sale in his personal bank account and never accounted therefor to the estate; that the administrator was not entitled to take credit for $200 alleged to have been paid to the undertaker on account of funeral expenses for the reason that the widow loaned and advanced to him (Maltby) sums of money considerably in excess of the $200, which advances were not repaid to the widow; that the administrator was not entitled to credit for his alleged disbursements on account of interest for the reason that the widow made advances and loans to Maltby in amounts in excess of the interest payments; that Maltby was not entitled to credit for the fire insurance premium for the reason that the widow advanced sums in excess of such amount to him; that he had not repaid to her any of the moneys so advanced; that he was not entitled to a credit of $75 which he disbursed to an attorney on account of fees, for the reason that the attorney was never employed by the estate, did not render any services for the benefit of the estate, and served only the administrator to the detriment of the heirs. The heirs also showed that in addition to the proceeds of the checking account in the sum of $367.42 and the proceeds of the Casanove notes of $100, there came into the hands of the admin-

istrator a Packard automobile, which he sold on or about September 23, 1930 for $650, or a total of $1,117.42. The objectors further pointed out that although Maltby was appointed administrator on September 15, 1930, the account and report filed on April 8, 1941 was the first account or report made to the court or to anyone; that the administrator was chargeable with interest at the rate of 10 per cent per annum on all moneys, notes, bonds and credits withheld after a period of 2 years and 6 months from the date letters of administration issued to him; that the items of interest and insurance premium were not paid on account of the widow's award, as claimed by the administrator; that the administrator neglected to have a widow's award made and allowed until compelled to do so, pursuant to an order of court entered on October 3, 1940; and that the widow never requested Maltby to pay the interest due on the mortgage and the fire insurance premium and to charge the same to her widow's award, or to her distributive share. Objectors further stated that out of the $1,117.42 that came into the hands of the administrator and the additional funds advanced to him by the widow, the administrator had sufficient moneys in his hands to pay the funeral bill, the widow's award of $500, and to pay the interest item and insurance premium. They also stated that Maltby did not account for two notes of Charles Casanove, dated August 10, 1930, in the sum of $50 each. The heirs filed additional objections stating that Maltby was not entitled to any credit for the notes in the sum of $322.35 which he gave to the undertakers, and that the claim of the undertakers had been allowed; that the administrator was not entitled to any fees because of his neglect in the administration of the estate; that the administrator was not entitled to have any allowance of fees for his attorney; and that all the costs and expenses incurred should be charged against the administrator. On April 24, 1941, the probate court granted

leave to the administrator to amend his account and report by adding this clause: "That your administrator charges himself with two notes of Charles L. Casanove in the sum of $50.00 each. Considered desperate." After a trial, the probate court found that the administrator was chargeable with the proceeds of the sale of the Packard automobile in the sum of $650, less a credit of $20 expended by him for repairs to the automobile and expenses incurred in connection with the sale of the automobile. The court further found that the two interest items of $90 each, the fire insurance premium of $6 and the sum of $75 paid on account of attorney's fees, were not proper credits to the administrator; that the administrator delivered to the undertakers his personal promissory notes in the sum of $322.35 for the balance due on the claim for funeral expenses, which notes were accepted in full payment and satisfaction of the balance of the claim of the undertakers, and that the administrator should be allowed credit for the notes when he submits to the court evidence of payment. The court also found that no selection was made by the widow as and for her widow's award, and that the widow's reward remains unpaid. The court ordered that the administrator recast his account and report in conformity with such findings within 10 days, and denied his request for allowance of fees to himself and his attorney. The objectors perfected an appeal to the circuit court, where the case was tried *de novo*. That court entered an order, finding as did the probate court. The circuit court, however, also found that the administrator was chargeable with interest at the rate of 10 per cent per annum on all moneys, funds and credits which he had in his possession or control as property or assets of the estate from the period of 2 years and 6 months following the issuance of his letters of administration. The circuit court ordered the administrator to recast his account and report in

conformity with its findings within 30 days, denied his request for allowance of fees to himself and his attorney, and ordered that he pay all the costs.

Douglas Warwick and Edna Warwick lived at the Baker home. Baker and Warwick were engaged in buying and selling used cars. On the day of Baker's death, Warwick bought a Packard automobile with Baker's money. He drove this car at the funeral and about a week later sold it for $650, less some expenses, and turned the proceeds over to Maltby, who deposited the money in his personal account in the Austin State Bank on September 23, 1930. At the time of his death, Baker carried a checking account with a balance of $621.67 in the Austin State Bank. He also had 4 notes dated September 11, 1930 for $50 each, signed by Charles L. Casanove. These were possessed by him in connection with the used car business. Decedent's checking account was transferred to the estate. The administrator permitted the bank to deduct $255 and interest to cover a loan which had been make by Baker. This resulted in the reduction of the bank balance from $621.67 to $367.42. On April 10, 1931, Maltby, as administrator, drew a check on the account payable to himself for $200. He deposited this check in his personal account. On April 22, 1931 he drew another check on this account for $100. On June 25, 1931 he drew a check for $40 to the order of Hughes Coal Company. The balance of the bank account in the sum of $27.42 was checked out to Maltby on October 17, 1931. Maltby received payment of two of the Casanove notes, a total of $100, shortly after the opening of the estate. He said he used the proceeds of the collection of the notes to pay bills.

Maltby testified that about September 20, 1930 he had a conversation with the widow pertaining to the Packard automobile, which at that time was in the Baker garage. He stated that the matter of the automobile was brought up by Mrs. Baker; that Warwick

and his wife were living at the Baker home; that War-
wick was not employed; that the matter of Warwick
selling the car was brought up; that it was proposed
that the car be sold; that Maltby agreed to the proce-
dure; that Warwick then sold the car; that the amount
received was turned over to Maltby, who deposited
it in his personal account; that Warwick purchased
another car later and Maltby gave him a check for the
second car; that Warwick later bought another car
and Maltby gave him the money for it; that 10 or 15
cars were purchased after that; that no profits were
made on the cars; that the witness was not engaged in
business with Warwick; that he simply received the
money and gave Warwick checks with which to buy
the cars; and that the money, as it came in, was used
to pay household bills at the Baker home. Maltby
further testified that in a conversation with Mrs.
Baker shortly after the funeral she suggested that she
take the car into her possession as a part of the estate
and let Warwick sell it; that Maltby never had pos-
session of the car; that the second car purchased cost
about $400; that he kept the balance in his account;
that the widow would see the cars coming in as they
were kept in the garage at all times; that the proceeds
of the sales were used to pay grocery bills, coal bills,
light bills and telephone bills at the Baker home; and
that Warwick received a commission on each automo-
bile sale.

Maltby admitted that he did not report the situa-
tion as revealed by his testimony, to the probate court.
He admitted having received $200 at one time from
the widow to pay back a loan he claimed he had made
for her about the time of her husband's death; that
later on he received $300 from her; and that on an-
other occasion he received $200 from her. The court
struck out the testimony of both the administrator and
the widow regarding these items totaling $700. The
objectors offered to show that the widow received the

proceeds of the decedent's life insurance policy of nearly $2,000, and that within the first year of the administrator's appointment, he had received, in amounts of $200, $300, $500 and lesser amounts, a total of approximately $1,500 of her insurance money. This testimony was offered to offset the attempt of Maltby to show that as administrator he was using the estate's funds to supply the widow and the Warwicks with funds for living expenses. Objectors point out that within a few weeks after his appointment, Maltby received the balance of decedent's checking account, $367.42, the proceeds from the sale of the Packard car, $650, payment of the Casanove notes, $100, and $700 from the widow, or a total of $1,817.42. The administrator admitted that these items, as they were received, were deposited to his personal account in the Austin State Bank, in which he had a checking account, or were drawn out to his own order. What became of the various loans and advances made by Mrs. Baker is not disclosed. She testified that he told her they were for payrolls. Objectors point out that Maltby was appointed administrator on September 15, 1930, but that he paid so little attention to his duties as administrator that on May 29, 1936 his surety, without notice to the heirs, petitioned the court to permit its petition to be accepted in lieu of a final account and to excuse the administrator from further duties. When this action was discovered by the objectors, at their instance the probate court ordered the estate reopened and appointed appraisers to fix and allow the widow's award. An award of $500 was thereupon made and approved by the court. Maltby obtained an order of court for leave to file an amended inventory. It was not until then that the Packard car was inventoried. The widow further testified that in the years of 1932 and 1933 she spoke to Maltby on three occasions and asked him when the estate would be settled, and about the settlement of the Casanove notes; that on one occasion he promised

he would attend to it; that on another occasion he put her off, and finally he told her that "the estate wasn't worth the ink on the paper, that the estate didn't amount to any more than that." The widow denied that she had any conversation with Maltby pertaining to the automobile, or that she accepted the automobile for her widow's award. It appears that the undertakers took judgment against Maltby on his personal notes given for the balance of the funeral bill. The record shows that the judgment remains unpaid.

The administrator asserts that the probate and circuit courts are vested with equitable jurisdiction in adjusting and settling the claims of the parties, and that this court should review both the law and the facts. In *Foreman State Trust & Savings Bank v. Tauber,* 348 Ill. 280, 285, our Supreme Court said: "The probate courts of this State, in the adjustment and allowance of claims against the estates of deceased persons, are invested with equitable jurisdiction." (*Henry v. Caruthers,* 196 Ill. 136; *Estate of Ramsay v. Whitbeck,* 183 Ill. 550.) In reading the record, we have kept in mind the principle announced in the *Tauber* case. The administrator calls attention to the part of his account wherein he sets out that the widow was allowed an award of $500, that she elected to apply the Packard automobile, valued at $400, on such award, and that by the disbursements for interest and an insurance premium he paid the remainder of her award, leaving nothing due to the widow, and he argues that the trial court erred in finding that he was chargeable with $650, the proceeds of the sale of the Packard automobile. In endeavoring to sustain this contention, Maltby calls attention to his testimony that shortly after the funeral he had a conversation with the widow in which she suggested that she be allowed to take the car as part of the estate, to which he agreed. His excuse for not reporting the situation to the probate court is that he did not know that it was

necessary to do so. He also complains that the court allowed him a credit of $22 because of repairs on the Packard, whereas he testified that the repairs and advertising amounted to approximately $43. He insists that it is inequitable to require him to pay the $500 widow's award, when the evidence shows that the funds of the estate were paid out by him for the expenses of the Baker home, where three of the objectors resided and received the benefits. Recalling the separate maintenance suit brought by Helen Maltby against him in February 1940, the administrator suggests that such action explains why the objectors, who had done nothing from the time of his appointment in September 1930, sought to have him surcharged in 1940.

We are of the opinion that the circuit court was fully justified in the action that it took. The trial judge found that the evidence sustained the objections presented. The statement of what took place clearly shows that the administrator made no pretense of administering the estate in the manner provided by law. In evaluating the testimony, the court had a right to take into consideration the interest of the parties and the fact that the administrator's wife was suing for separate maintenance. The fact that she was suing for separate maintenance would not necessarily indicate that she was actuated by any improper motive in attacking his administration of the estate. The Packard automobile was an asset of the estate, yet the administrator did not list it in the inventory. When called to account, he contended that it was turned over to the widow for application on her award. She denied that she had any conversation with him wherein she suggested that the automobile be turned over to her. As a matter of fact, the automobile was sold by Warwick and the proceeds delivered to and deposited in the personal account of the administrator. One of the duties of the administrator upon his appointment was to file a correct inventory, cause an appraisement of

the property to be made and a widow's award to be fixed, allowed and approved. The inventory was filed and approved. For some reason the fact that the personal property was not appraised and a widow's award fixed and allowed, escaped the attention of the probate court at the time the inventory was approved. The award of $500 was not made until the estate was reopened at the instance of objectors. In his account the administrator endeavors to take credit for $400, the value of the Packard automobile selected, as he contends, by the widow, and $100 disbursed for her benefit in the payment of interest and a fire insurance premium, or a total of $500. The probate and circuit courts were justified in finding that the widow did not select the automobile to be applied on her award as a widow. The items of interest and insurance premium for which the administrator sought to take credit in his account, were not owing at the time of Baker's death. The administrator takes no title to real estate, either legal or equitable. It descends to and vests in the heirs upon the death of the ancestor. He has no control over the real estate. The heirs hold title in their own right, subject to the payment of the debts of their ancestor in the mode prescribed by law. The administrator had no interest in the land. He had the power, upon a deficiency of personal assets, to apply to the court for a decree to sell the real estate for the payment of the debts of the decedent. Futhermore, Maltby had $700 of the widow's insurance money. If he made the two interest payments totaling $180 and the payment of the insurance premium of $6, he had ample funds of the widow with which to reimburse himself. In view of his contentions, we are of the opinion that the court should have permitted the introduction of the proffered testimony that within eight or nine months following the death of her husband, Maltby received approximately $1,500 of the proceeds of the insurance policy left her by her husband. This

testimony should have been received to contradict his claim that he was supplying the funds for the purchases of food and the payment of the various household bills.

The administrator contends that the court erred in charging him with statutory interest of 10 per cent per annum on the money which the court found he had in his possession for the period of 2 years and 6 months from the date of his appointment to the date of his accounting. The Administration Act in effect during the period covered by this case required that "all moneys, bonds, notes and credits which any administrator or executor may have in his possession or control as property or assets of the estate, at a period of two years and six months from the date of his letters testamentary or of administration, shall bear interest, and the executor or administrator shall be charged interest thereon from said period at the rate of ten per cent. . . . unless good cause is shown to the court why such should not be taxed." (Section 114 of Administration of Estates Act, sec. 116, ch. 3, Cahill's Statutes 1931.) The Administration Act now in effect contains a similar provision, except that the interest begins to run at the expiration of two years. (Sec. 462, ch. 3, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 110.559].) In our opinion, the facts of this case speak for themselves, and show that the circuit court was fully justified in finding that the administrator is chargeable at the rate of 10 per cent per annum on the moneys, funds and credits which he had in his possession or control as assets of the estate from the period of 2 years and 6 months following his appointment as administrator. We also agree with the trial court that under the factual situation presented the administrator should not be allowed any fees for his services, nor should he be allowed any fees for the services of his attorneys. The services rendered by the attorneys did not benefit the estate. The adminis-

trator is entitled to a credit of $43 for the repairs made and advertising charge incurred in the sale of the Packard car. The court allowed him $22.

For the reasons stated, the order of the circuit court of Cook county entered on October 3, 1941, is amended so as to give the administrator an additional credit of $21, and as amended is affirmed.

*Order affirmed.*

HEBEL and KILEY, JJ., concur.