NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2019 IL App (4th) 190199-U

NO. 4-19-0199

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 15, 2019
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Estate of DONALD C. DURBIN JR., Deceased | ) | Appeal from the |
| (DAVID S. DURBIN and RICHARD L. DURBIN, | ) | Circuit Court of |
| Petitioners-Appellants, | ) | Sangamon County |
| v. | ) | No. 03P684 |
| CITIBANK USA; MBNA AMERICA; BANK ONE, | ) | |
| NA; NANCY DURBIN; and PAUL E. PRESNEY, SR., | ) | Honorable |
| Respondents-Appellees). | ) | Adam Giganti, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice Holder White and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding that (1) the trial court did not err by
denying petitioners' request that the administrator be charged interest,
(2) petitioners waived any claim they were entitled to punitive damages, and
(3) the award of $500.41 to the estate's attorney was not manifestly erroneous.

¶ 2    Decedent, Donald C. Durbin Jr., died intestate in September 2003, leaving three

siblings: respondent Nancy Durbin (Nancy) and petitioners David S. Durbin and Richard L.

Durbin (petitioners). In October 2003, the Sangamon County circuit court appointed Nancy as

independent administrator of decedent's estate without objection.

¶ 3    In January 2018, petitioners each filed petitions to (1) terminate Nancy as

independent administrator pursuant to section 28-4 of the Probate Act of 1975 (Probate Act) (755

ILCS 5/28-4 (West 2016)) and (2) compel an accounting (*id.* § 28-11). Nancy filed a final

accounting in March 2018, and petitioners filed objections in April 2018. Petitioners alleged, in part, that (1) Nancy should be charged interest at the statutory rate of 10% on the fair market value of the assets of decedent's estate, pursuant to section 24-10 of the Probate Act (*id.* § 24-10) for failing to distribute decedent's estate within two years and (2) Nancy breached her fiduciary duty as administrator.

¶ 4        In November 2018, the trial court entered a written order addressing petitioners' objections, in which the court (1) found that Nancy should not be charged interest and (2) awarded $500.41 to Nancy's attorney. The court additionally dismissed respondents Citibank USA, MBNA America, and Bank One, NA's claims against the estate for failure to prosecute.

¶ 5        Later that month, petitioners filed a motion to reconsider the November order and requested an evidentiary hearing on whether they were entitled to punitive damages in the form of attorney fees. Alternatively, they requested leave to file a petition for relief against Nancy outside of probate. In March 2019, the court denied petitioners' motion in its entirety.

¶ 6        Petitioners appeal, arguing that the trial court erred by (1) not charging Nancy with interest pursuant to section 24-10 of the Probate Act (*id.*), (2) failing to hold a hearing on whether petitioners were entitled to punitive damages in the form of attorney fees, and (3) awarding $500.41 to Nancy's attorney. We disagree with the contentions and affirm the trial court's judgment.

¶ 7                              I. BACKGROUND

¶ 8                    A. Letters of Administration and Inventory

¶ 9        In October 2003, the Sangamon County circuit court appointed Nancy independent administrator of decedent's estate. In November 2003, Nancy filed a petition for letters of administration pursuant to section 9-4 of the Probate Act (*id.* § 9-4), which estimated

the value of decedent's estate to be $55,000. Between January and April 2004, respondents Citibank USA, MNBA America, and Bank One, NA, filed claims against decedent's estate for $842.88, $2093.10, and $2176.47, respectively. Discover Financial Services, Inc., who is not a party to this appeal, filed a claim in December 2003 against decedent's estate for $1913.32. Respondents Citibank USA, MNBA America, and Bank One, NA, do not appeal the trial court's dismissal of their claims against the estate for failure to prosecute.

¶ 10　　　　In November 2004, Nancy filed an inventory with the court, listing decedent's assets, which totaled $13,761.79. The assets were the following: (1) Town & Country Bank of Springfield savings account: $12,248.69; (2) A.G. Edwards & Sons account: $1244.82; (3) one Series E and two Series EE savings bonds in the amounts of $171.02, $49.34, and $47.92, respectively; (4) 1992 Ford Explorer van; (5) 1968 Ford pickup truck; (6) 1971 Ford F-250 pickup truck; and (7) miscellaneous personal effects and wearing apparel. The inventory indicated that the 1992 Ford Explorer van, 1968 Ford pickup truck, and the 1971 Ford F-250 pickup truck were all in poor condition or inoperable, and therefore had no resale value. The miscellaneous items were listed as having "nominal" value.

¶ 11　　　　B. Petitions To Terminate and Objections to Final Account

¶ 12　　　　In January 2018, petitioners each filed petitions to (1) terminate Nancy as independent administrator pursuant to section 28-4 of the Probate Act (*id.* § 28-4) and (2) compel an accounting pursuant to section 28-11 of the Probate Act (*id.* § 28-11).

¶ 13　　　　On March 8, 2018, Nancy distributed $853.00 to each of the petitioners and $853.83 to herself. On March 9, 2018, Nancy *pro se* filed a final account of decedent's estate. The account listed $15,198.52 in inventory, $15,671.67 in disbursements, $571.37 in deposits,

and $7023.60 in unpaid debts. Nancy requested the estate be closed upon approval of the final accounting.

¶ 14        On April 13, 2018, petitioners filed objections to the final account and to the closing of decedent's estate. Specifically, petitioners alleged Nancy failed to (1) file a verified report, (2) account for certain assets, (3) account for certain receipts and disbursements, (4) timely administer the assets of the estate, and (5) propose distributions in accordance with the law. Petitioners claimed that Nancy previously stated the value of decedent's estate was approximately $55,000, but a year later stated the value of the estate was only $13,761.79. Petitioners requested the final account not be approved and the estate not be closed until Nancy corrected these errors.

¶ 15        On April 23, 2018, Nancy filed an amended final account with the assistance of counsel. The final account listed $7023.60 in unpaid debts, $16,573.75 in receipts, and $16,627.34 in disbursements for a total negative balance of $7077.19. Nancy reported that following her appointment, she "filed three years of back income tax returns for the decedent with the Internal Revenue Service, negotiated the payment of taxes, penalties, interest and late fees; and that the tax liability, together with the burial expense and credit card liabilities *** far exceeded the assets." The final account additionally indicated Nancy paid bills to the Sangamon County Farm Bureau and United States Department of Agriculture and provided for funeral and burial expenses. Earlier in 2018, she sold decedent's Comcast stock, which was separate from the Comcast stock in decedent's AG Edwards account, and obtained $238.45 in unclaimed property from the State of Illinois. Finally, she reported she had taken no fee for services rendered, was aware of no further assets to marshal, and therefore believed the estate was insolvent and should be closed.

¶ 16     On May 17, 2018, Nancy filed a response to petitioners' objections, arguing she cured each of their objections by filing the verified final account on April 23, 2018, which accounted for all assets, receipts, and disbursements. Nancy asserted that the initial petition for letters of administration that she filed in 2003, which stated the value of the estate as approximately $55,000, was merely an estimate based upon the information available to her prior to being appointed administrator. Nancy further argued that the March 2018 distributions to petitioners and herself should be recovered by the estate so that the funds could be made available for payment of creditors' claims and administration expenses.

¶ 17     On August 15, 2018, petitioners filed a reply to Nancy's response. In the reply, petitioners argued that Nancy should be charged interest at the statutory rate of 10% on the fair market value of the assets of decedent's estate pursuant to section 24-10 of the Probate Act (755 ILCS 5/24-10 (West 2016)) for failing to distribute decedent's estate within two years. Petitioners again argued that Nancy failed to file a verified report, account for all assets, receipts, and disbursements, and had not properly provided for payment of claims against the estate. Petitioners further requested that Nancy be held personally liable to the estate for the value of certain assets that she failed to administer in a timely manner.

¶ 18     A docket entry dated September 5, 2018, stated the case was called for a hearing on petitioners' "response to Administrator's Response to Objection of Final Account." The matter was "continued and reset for Phone Conference on 10/05/2018 ***."

¶ 19     On September 13, 2018, petitioners filed a motion for substitution of attorneys, which the trial court granted, and their new attorney filed his entry of appearance.

¶ 20     C. Stipulated Issues and Final Arguments

¶ 21 On September 19, 2018, Nancy filed a written argument on petitioners' final objections to the final account. Nancy stated that at the hearing on September 5, 2018, the parties entered into a stipulation in open court that there were six remaining objections to the final accounting. According to Nancy, the six issues were as follows: (1) Comcast stock and dividends, (2) Series E and EE savings bonds, (3) three vehicles and their disposition, (4) decedent's income tax returns, (5) failure to distribute the estate within two years, and (6) Nancy's administrator and attorney fees. There is no report of proceedings or bystander's report in the record memorializing the September 5, 2018, hearing or the parties' stipulation as to the six remaining objections to the final accounting.

¶ 22 With respect to the decedent's series E and EE savings bonds, Nancy stated that decedent and Nancy's father, who is now deceased, claimed that the bonds were his rather than decedent's. Nancy stated their father took the bonds and cashed them. She did not know whether the bonds did, in fact, belong to decedent.

¶ 23 Nancy also argued she should not be charged interest for failing to distribute the estate within two years because she had good cause not to do so. Specifically, she argued that almost the entire value of the estate had been expended within the first two years of her appointment as administrator and four pending claims remained against the estate. Accordingly, Nancy needed to hold any remaining funds "until such time as failure to prosecute was conclusive."

¶ 24 Nancy further argued that (1) she and the attorney representing the estate were entitled to administrator and attorney fees, respectively, (2) petitioners' objections to the final account should be denied, (3) the claims of the creditors should be dismissed for failure to prosecute, and (4) the estate should be closed.

¶ 25        On September 26, 2018, petitioners, represented by new counsel, filed a reply to Nancy's argument on the six objections to the final account. Petitioners argued that Nancy should be charged interest because she did not show good cause for her failure to distribute the estate within two years. Specifically, Nancy "failed to pay creditors but wrongly attempt[ed] to justify this by asserting that none of the claimants prosecuted their claims during the last fifteen years." Petitioners further argued Nancy failed to support her request for administrator fees because she did not provide documentation of "exactly what she claims to have done in connection with her work on the estate." Finally, petitioners argued for the first time that the trial court should hold an evidentiary hearing "to assess not only the amounts of fees incurred to various counsel and their reasonableness but also who should pay them," because "[c]ompensation for fees that had to be incurred because of the acts or omissions of [Nancy] should be fully addressed."

¶ 26        A docket entry dated October 5, 2018, stated:

> "Phone conference held by court with [a]ttorneys ***. Parties agree the court shall render decision based upon pleadings unless after reviewing recent pleadings and submitted documents the court deems a hearing is necessary. Court will contact the attorneys if it feels testimony is necessary. If court deems additional testimony is not necessary then court will render decision based upon written Arguments and documents submitted by parties."

¶ 27        On October 18, 2018, petitioners filed a supplement to their September 26, 2018, argument. In this supplemental pleading, petitioners requested the trial court hold an evidentiary hearing at which Nancy's "acts and omissions over the years can be laid out." They further

requested the court enter an order indicating that "additional punitive relief [against Nancy] is appropriate under the circumstances."

¶ 28                                    D. The Trial Court's Order

¶ 29          In November 2018, the trial court entered a written order addressing petitioners' six remaining objections as stipulated to by the parties on September 5, 2018. The court, among other findings, found that Nancy should not be charged interest on the fair market value of the assets of decedent's estate. The court noted that there were claims against the estate totaling more than $7000, none of the claimants had prosecuted their claims in the last 15 years, and Nancy had made distributions to herself and petitioners in March 2018. The court then wrote the following:

> "In view of the outstanding claims and the fact that distribution was considerably less than those claims, the Court finds that [Nancy] had reasonable cause not to distribute pending prosecution of the claims by the claimants and that [Nancy] was under no duty to prosecute the claims of the creditors."

¶ 30          The trial court found the final balance of the estate, taking into account adjustments regarding the Comcast stock, savings bonds, and disposition of vehicles, was $500.41. The court ordered that the balance be used to pay a portion of the fees of Nancy's attorney. The court did not require Nancy and petitioners to return the distributions they received in March 2018. The court additionally dismissed all creditors' claims for failure to prosecute and did not award Nancy an administrator fee due to lack of funds. Finally, the court ordered that upon compliance with the terms of its order, the estate be closed and Nancy be discharged as administrator. The court did not address petitioners' September 26 or October 16 requests for an evidentiary hearing on whether they were entitled to "punitive relief" against Nancy.

¶ 31                    E. Petitioners' Motion To Reconsider

¶ 32        On November 29, 2018, petitioners filed a motion to reconsider the November order and for leave to file a petition for relief against Nancy outside of probate. In the motion, petitioners requested an evidentiary hearing on the issue of whether they were entitled to punitive damages in the form of attorney fees. Nancy responded that (1) petitioners' request for punitive damages was outside the scope of the six stipulated issues and (2) although petitioners were represented by different counsel at the time of the stipulation, petitioners' new counsel was nevertheless bound by the stipulation.

¶ 33        Petitioners replied that whether they were entitled to damages was within the scope of the stipulation. In support of this argument, they attached a document marked as Exhibit A and titled "Outstanding Issues." The document contained a table with seven rows and three columns. Petitioners purported this table memorialized the six remaining objections pursuant to the September 5, 2018, stipulation. The columns were titled "Issue," "Administrator's Last Response," and "[Petitioners'] Pending Objection." The seventh row of the "Issue" column stated "Fees." Under "[Petitioners'] Pending Objection" in the "Fees" row, it stated the following: "Dispute and demand evidence in support of fees, demand damages for failure to administer estate." In further support of their argument, petitioners stated, "[Petitioner] David recalls that the issue of damages caused to himself and [petitioner] Richard did get discussed [on September 5, 2018,] but were set aside as issues to be resolved later." Exhibit A does not appear anywhere else in the trial court record.

¶ 34        In March 2019, the trial court denied petitioners' motion in its entirety, reiterating that "prior to the hearing conducted on September 5, 2018[,] the parties stipulated six remaining objections to the Final Accounting existed."

¶ 35        This appeal followed.

¶ 36                              II. ANALYSIS

¶ 37        Petitioners appeal, arguing that the trial court erred by (1) not charging Nancy with interest, pursuant to section 24-10 of the Probate Act (*id.* § 24-10), (2) failing to hold a hearing on whether petitioners were entitled to punitive damages in the form of attorney fees, and (3) awarding $500.41 to the attorney for the estate. We discuss each of these issues in turn.

¶ 38                              A. Interest

¶ 39        Section 24-10 of the Probate Act states the following:

>        "At the expiration of a period of 2 years after the issuance of letters of office in a decedent's estate, the representative shall be charged with interest at the rate of 10% per year on the fair market value of all the personal estate which has come into his possession or control and has not been properly paid out or distributed, except for good cause shown." 755 ILCS 5/24-10 (West 2016).

¶ 40        The purpose of this provision is to serve as a penalty and "to make it unprofitable for executors and administrators to hold the funds of an estate in their hands, and to use them in their own business for their own benefit instead of distributing such funds to those entitled thereto." *In re Estate of Kapraun*, 21 Ill. App. 2d 231, 246, 157 N.E.2d 700, 707 (1959). Courts strictly construe this section of the Probate Act because it is penal in nature. *Id.* It does not set out any special procedure the administrator must follow in order to make a showing of "good cause." *Id.* at 244. "As long as 'good cause', if any, is shown by the record, that would seem to comply with the statute." *Id.*

¶ 41        Petitioners contend the standard of review in this case should be *de novo* "as addressing statutory construction *** as well as an uncontroverted record." This is incorrect. In

- 10 -

reviewing a trial court's finding whether there was good cause for an administrator's failure to distribute assets at an earlier time, "all reasonable presumptions are made in favor of the trial court, the appellant has the burden to affirmatively show the errors alleged, and the judgment will not be reversed unless the findings are clearly and palpably contrary to the manifest weight of the evidence." *In re Estate of Vail*, 309 Ill. App. 3d 435, 438, 722 N.E.2d 248, 251 (1999). Findings are against the manifest weight of the evidence only where the opposite conclusion is clearly evident, or where they are unreasonable, arbitrary, and not based on the evidence. *In re Estate of Kusmanoff*, 2017 IL App (5th) 160129, ¶ 83, 83 N.E.3d 1144.

¶ 42        Here, the trial court's determination that Nancy had good cause not to distribute the estate in a timely manner was not against the manifest weight of the evidence. First, the court considered Nancy's initial good-faith efforts on behalf of the estate after it appointed her as administrator. She had junked one of the inoperable vehicles, recovered another from the salvage yard where petitioner Richard had taken it, and obtained an estimate for potential repairs to the third. She additionally paid a third-party tax preparation service to prepare decedent's 2000, 2001, and 2002 tax returns. The record also shows she (1) paid bills to the Sangamon County Farm Bureau and United States Department of Agriculture and (2) provided for funeral and burial expenses.

¶ 43        Furthermore, the trial court noted Nancy's delay in distributing the estate was primarily due to the four creditors' claims that remained pending against the estate. The court found that because the potential distribution to decedent's heirs (Nancy and petitioners) was "considerably" less than the claims of the creditors, Nancy "had reasonable cause not to distribute pending prosecution of the claims" and "[Nancy] was under no duty to prosecute [them]." We agree. If the claims had been successfully prosecuted by the creditors, there would

have been no funds left to distribute. The creditors' claims were worth over $7000, and the final balance of the estate was just $500.41. Though Nancy left the claims pending for fourteen years, she had no duty to aid the creditors in securing payment; rather, her duty was to defend the estate in the event the claims were prosecuted. See *In re Estate of Nonnast*, 300 Ill. App. 537, 361, 21 N.E.2d 796, 807-08 (1939).

¶ 44 Petitioners cite to the following cases in which courts ordered that an administrator be charged interest after a lengthy delay in distributing assets: *In re Estate of Schofield*, 99. Ill. 513 (1881) (charging interest against administrator who commingled estate assets in his personal bank account); *In re Estate of Baker*, 315 Ill. App. 366, 43 N.E.2d 170 (1942) (charging interest to administrator who deposited proceeds from decedent's assets into his personal bank account); *In re Estate of Thomson*, 139 Ill. App. 3d 930, 487 N.E.2d 1193 (1986) (remanding for trial court to determine whether beneficiaries were entitled to interest where administrators did not explain delay in distribution). We conclude all of these cases are inapposite.

¶ 45 None of these cases is applicable to the circumstances in this case. First, the record does not support any suggestion that Nancy improperly transferred or commingled estate assets with her own personal accounts. Nancy sold $293.76 worth of Comcast stock in March 2018 once it became apparent those shares were separate from decedent's shares from the AG Edwards account. AG Edwards handled all other stock sales associated with decedent's estate. Further, Nancy's delay in the sale of the series E and EE savings bond was due to her mistaken belief that her deceased father had sold the bonds. Nancy then sold the bonds as soon as they were recovered. The record contains no evidence that any of the delays here were an attempt by Nancy to maintain assets for her personal benefit, as contemplated by section 24-10 of the

Probate Act (755 ILCS 5/24-10 (West 2016)). Accordingly, we decline to disturb the trial court's decision not to charge Nancy with interest.

¶ 46                              B. Punitive Damages

¶ 47        Petitioners next argue the trial court erred when it failed to hold an evidentiary hearing on their request for punitive damages in the form of attorney fees. Petitioners request this court (1) award them the fees established in the record or remand for an evidentiary hearing on what fees should be awarded, (2) remand to the trial court for an evidentiary hearing on whether they waived their damages claim by stipulation, or (3) grant them leave to file a direct action against Nancy outside of probate court. They further request that any remand be directed to the Chief Circuit Judge for reassignment to a different judge.

¶ 48        Nancy responds that petitioners' requests are outside the scope of the six stipulated issues that were before the trial court and therefore petitioners waived any argument that they are entitled to punitive damages.

¶ 49        We agree with Nancy.

¶ 50                              1. *Stipulation*

¶ 51        "Where the parties by stipulation prescribe the issues on which the case is to be tried," it "amounts to a binding waiver or elimination of all issues not included in the stipulation." *Western National Bank v. Village of Kildeer*, 19 Ill. 2d 342, 346, 167 N.E.2d 169 (1960); see also 83 C.J.S. Stipulations § 62 (2019) ("The court lacks authority to go beyond the stipulated issues, and may not address issues that the stipulation withdrew or excluded from consideration."). A trial court's decision to accept a stipulation is reviewed for an abuse of discretion. *In re Commitment of Chester*, 2017 IL App (1st) 160979, ¶ 17, 87 N.E.3d 338.

¶ 52 We also note that Illinois Supreme Court Rule 323 (eff. July 1, 2017) requires the report of proceedings filed in the appellate court to include all of the evidence pertinent to the issues on appeal.

> "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984).

¶ 53 The record on appeal contains no written record of the parties' September 5, 2018, stipulation. However, both parties acknowledged the existence of the stipulation in their final arguments before the trial court, and the trial court referred to "the stipulated six objections to the Final Account of the Administrator filed April 23, 2018," in its written order. Nancy stated in her final argument that the sixth stipulated issue was "Fees of the Administrator and the Administrator's Attorney." In their response, petitioners characterized the sixth issue as "Fees," and devoted most of their argument to whether Nancy and her attorney were entitled to fees. That response was the first time petitioners ever raised the issue of whether they were entitled to either damages or an evidentiary hearing on damages.

¶ 54 We conclude that petitioners waived any argument they are entitled to punitive damages because the issue of damages was not included in the parties' September 5, 2018, stipulation. In support of this conclusion, we note that petitioners have failed to produce a report of proceedings, bystander's report, or any other documentation from the September 5, 2018,

hearing. Petitioners cite to Exhibit A—which they describe in their brief as "a piece of paper that listed what issues remained for resolution"—and assert this document was considered at the September 5, 2018, hearing. However, Exhibit A appears nowhere in the record (except as an attachment to the petitioners' motion to reconsider and in their brief before this court) and there is nothing to indicate that either Nancy or the trial court considered it to be an accurate characterization of the six remaining issues in the case.

¶ 55    The trial court's order stated it had considered all of the pleadings—including petitioners' September 26, 2018, and October 16, 2018, requests for punitive damages—and only addressed whether Nancy and the attorney for the estate were entitled to fees. We must therefore assume the trial court correctly found that (1) punitive damages were not within the scope of the stipulation and (2) petitioners had waived any argument on that issue.

¶ 56                                    2. *Evidentiary Hearing*

¶ 57    Even if we were to find that petitioners did not waive the issue of punitive damages by stipulation, we would still find no error. In support of petitioners' argument that they were entitled to an evidentiary hearing, petitioners cite to *In re Estate of Provus*, 30 Ill. App. 3d 378, 332 N.E.2d 759 (1975) (holding that the trial court erred by ruling that the beneficiaries of a testamentary trust had no right to object to the co-executors' final accounting) and *In re Estate of Elias*, 408 Ill. App. 3d 301, 326, 946 N.E.2d 1015, 1038 (2011) ("Attorney fees for an executor can be assessed against a party in a probate proceeding based either on equitable contribution or as punitive damages where there was willful or outrageous conduct due to evil motive or a reckless indifference to the rights of others.").

¶ 58    Petitioners' reliance on *Provus* and *Elias* is misplaced. *Provus* does not support the conclusion, as petitioners claim here, that any person aggrieved by an executor's alleged

- 15 -

mismanagement of an estate is entitled to an evidentiary hearing on the issue of punitive damages as of right. Here, the trial court affirmatively found that Nancy had not mismanaged the estate or engaged in any other wrongdoing—much less the "willful or outrageous conduct due to evil motive" contemplated by *Elias*. This finding precluded any argument petitioners were entitled to punitive damages in the form of attorney fees. Accordingly, an evidentiary hearing was not necessary.

¶ 59                           C. Administrator Attorney Fees

¶ 60          Last, petitioners argue the trial court's decision to award $500.41 in fees to Nancy's attorney was manifestly erroneous. Section 27-2(a) of the Probate Act provides that "[t]he attorney for a representative is entitled to reasonable compensation for his services." 755 ILCS 5/27-2(a) (West 2016). The trial court has broad discretion in determining the amount of fees to be awarded to an attorney under the Act. *In re Estate of Bitoy*, 395 Ill. App. 3d 262, 272, 917 N.E.2d 74, 82 (2009). "The factors to be considered include the size of the estate, the work done and the skill with which it was performed, the time required, and the advantages gained or sought by the services or litigation." (Internal quotation marks omitted.) *Id.* A reviewing court will overturn an award of attorney fees only where the trial court's determination is manifestly erroneous or a clear abuse of discretion. *Id.* "A plain case of wrongful exercise of judgment would be necessary to justify a reversal." *In re Estate of Marks*, 74 Ill. App. 3d 599, 604, 393 N.E.2d 538, 548 (1979).

¶ 61          We conclude that the trial court's decision to award Nancy's attorney $500.41 in fees was not manifestly erroneous or a clear abuse of discretion. In its written order, the trial court found that Nancy's attorney prepared and filed the final account, final report, and closing of estate documents. In Nancy's final arguments on petitioners' objections, her attorney

estimated the value for this work was approximately $1500. The trial court determined that the $500.41 remaining balance of the estate was a reasonable fee for that work based on the attorney's experience and the time involved. In support of our conclusion, we note that "[t]he probate court has the necessary skill and knowledge to decide what is fair and reasonable compensation for legal services," (see *id.*) and the trial court's award in this case constituted a fraction of counsel's estimate.

¶ 62                                    III. CONCLUSION

¶ 63          For the reasons stated, we affirm the trial court's judgment.

¶ 64          Affirmed.